# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO.: 5:09-CV-00010-TBR

**KIM BYERS**                                                                              **PLAINTIFF**

v.

**MIDWEST TERMINAL, INC.**                                                                 **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Defendant, Midwest Terminal, Inc.'s, Motion for Summary Judgment (DN 12). Plaintiff has filed a response (DN 14). Defendant has filed a reply (DN 15). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

Also before the Court is Defendant's Motion for Leave to File Excessive Pages (DN 15). Plaintiff filed no response. This matter is now ripe for adjudication. Defendant's motion is GRANTED.

Also before the Court is Defendant's Motion for Leave to File Exhibit Inadvertently Omitted from its Reply to Plaintiff's Response to Motion for Summary Judgment (DN 16). Plaintiff filed no response. This matter is now ripe for adjudication. Defendant's motion is GRANTED.

## BACKGROUND

Defendant, Midwest Terminal, Inc., is a petroleum transport company supplying petroleum products to various industrial and commercial customers in the region. Plaintiff, Kim Byers, was hired as a fuel delivery driver for Defendant on August 18, 2003. Plaintiff drove a petroleum transport truck which is used to pull a petroleum tank trailer.

David Driskill worked as a dispatcher during the time Plaintiff was employed by Defendant and was also considered Plaintiff's supervisor. The daily assignment of jobs was at the discretion

of Driskill as there was no policy regarding how jobs were distributed. Each transport driver came in around 6:00 a.m. and was assigned their first load of the day. After their first load was completed, the driver would return to Midwest to be assigned another load. The second load was assigned based on which customer's order needed to be completed next and the order in which the drivers returned from their first load.

The majority of Defendant's customers used above-ground tanks. This required the driver to hook up at least two hoses in order to pump the fuel product from the truck into the customers tank. Thus, these jobs were referred to as "pump offs." Customers who used below ground tanks, usually convenience stores or gas stations, only required the driver hook up one hose and gravity unloaded the fuel product. These jobs were referred to as "drops" or "drop loads" and were generally considered easier than pump offs. Defendant had few convenience store, or drop, customers.

Over time, Defendant also conducted other more specific jobs. For example, drivers regularly transported fuel from a terminal in Memphis, Tennessee to the CNIC railroad in Fulton, Kentucky. This was referred to as the Memphis job and was considered easier because it involved mostly driving. Beginning in 2007, drivers also hauled ethanol from a railcar located at the P & L rail yard in Paducah to Defendant's facilities. This job was considered slightly more physically demanding because the driver was required to climb a ladder to the top of the railcar to unfasten a ventilation lid. Finally, drivers would also haul fuel to the Graves County Paving Plant during the summer months while it was in operation. This was also considered a more difficult and physically demanding job.

Plaintiff worked on the night shift when she was hired and shared a transport truck with an

individual named Gerald.[1] Plaintiff has testified that Gerald did not like sharing the truck with her and told her that she should not be working there because she was a woman and it was a man's job. She also testified that he left religious literature in the truck that reflected these views. Jack Campbell, former Transportation Manger, observed Plaintiff and Gerald in a heated argument one day and called them both into his office. Once in Campbell's office, Gerald made a derogatory comment to which Campbell responded. Plaintiff stated that after this incident things got better.

Plaintiff was moved to the day shift after Gerald was fired in 2004. There were four primary transport truck drivers who worked the day shift: Buddy Rittenberry, John Finke, Trevor Collins, and Plaintiff. Chris Marshall was later hired and two others, Shane Hayden and Tommy Cunningham, floated between transport trucks and bob trucks.

Plaintiff testified that one driver in particular, Trevor Collins, did not like her. Collins was good friends with David Driskill, the dispatcher. Plaintiff testified that she felt Collins was able to influence her job assignments because of this friendship. Plaintiff believed Collins had an issue with her working there because she was a woman. There was also testimony that Collins did not like Plaintiff because Plaintiff's lifestyle and sexual orientation. Plaintiff testified that she was given more difficult jobs than the other drivers because she was a woman.

In early August, 2007, Plaintiff strained her back while loading ethanol from the railcar. She was on workers' compensation leave until February 6, 2008. On January 29, 2008, her physician released her to return to work on February 4, 2008 with no restrictions. On February 6, 2008, Plaintiff was assigned the ethanol job. Later, Plaintiff spoke with Michael Smith, the Chief Operating Officer, about her concerns that the ethanol job was further aggravating her injury and

---

[1] Gerald's last name is not indicated in the record.

causing her pain. Plaintiff was then assigned the Memphis job. Plaintiff testified that she believed that other trips were intentionally added to the Memphis job she was assigned in order to make it longer than normal.

On February 19, 2008, Plaintiff was assigned the Memphis job. While at the Lion Terminal in Memphis, Plaintiff saw an employee of Defendant's Memphis location, Wil Taylor. There is dispute about what happened between Plaintiff and Taylor while at the terminal. Taylor states that he first spoke with Plaintiff about the location of the restroom, but later Plaintiff came to Taylor's truck, opened the door and began cursing at him for cutting in line. Taylor says Plaintiff was violently swinging his door and attempted to slam it shut when she walked away. Taylor says he attempted to catch the door with his right hand to keep it from smashing his left hand. In his attempt to catch the door he injured a finger on his right hand. He called Danny McGregor, his supervisor in Memphis, after the incident and sought medical attention for his injury.

Plaintiff, on the other hand, states that Taylor had cut in line at the terminal which upset the terminal manager and other drivers. She explained that, at the direction of the terminal manager, she went up to Taylor's truck to talk to him and that the discussion was heated. She testified that she did not slam the door, although she did shut it. She also said Taylor made no indication at the time that he had been injured. Plaintiff called Driskill after the incident to inform him that she had gotten into an argument with Taylor.

Upon returning that evening from the Memphis job, Plaintiff met with Don Kirby, who had replaced Campbell as Transportation Manager; Michael Smith; and Chris Jordan of Construction Safety Consultants Inc., a safety consultant firm used by Defendant. Plaintiff was suspended while Defendant investigated the incident. Jordan conducted the investigation obtaining statements from

4

Plaintiff, Taylor and McGregor. Jordan provided Defendants with his report on March 3, 2008. Defendant also considered a memo prepared by Don Kirby, the First Report of Injury or Illness completed by Taylor, and the emergency room note documenting Taylor's treatment at Concentra Medical Centers.

On March 6, 2008, Plaintiff met with Don Kirby and Michael Smith. She was notified at that time her employment was being terminated because of the incident with Taylor at Lion Terminal.

Plaintiff filed this suit in January of 2009, alleging Defendant intentionally discriminated against her because of her sex, age, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. §621; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.* Defendant now moves for summary judgment as to each of these claims.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v.*

5

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff has voluntarily dismissed her claims for age discrimination; therefore, Counts V and VI are dismissed and the Court need only address the remaining sex and disability discrimination claims.

### I. Sexual Discrimination in violation of Title VII and KCRA

Plaintiff has alleged sexual discrimination in violation of both Title VII and the KCRA for actions prior to her termination and for her termination. Claims brought under KCRA have consistently been construed as synonymous with claims raised under Title VII; therefore, the analysis of each is the same. *Williams v. Wal-mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).

A claim of gender or sex discrimination may be proved through either direct or circumstantial evidence. *Williams*, 184 S.W.3d at 495. If a plaintiff is without direct evidence, the plaintiff must satisfy the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *Id.* [2] Under the *McDonnell Douglas* framework, the plaintiff must first present a prima facie case of gender discrimination. 411 U.S. at 802. Once a prima facie case is presented, the defendant must then articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the defendant meets its burden, the burden shifts back to the plaintiff to establish that the stated reason was merely a pretext for discrimination. *Id.* at 804.

> In order to establish her prima facie case, Plaintiff must prove:
>
> (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.

*Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir.2004)).

### A. Discrimination Prior to Termination

Defendant argues that Plaintiff has failed to present evidence that she was subjected to an adverse employment action prior to her termination. An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006). Generally, it involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," and usually "inflicts direct

---

[2] The Court notes this is not a mixed-motive case. Although Plaintiff alleges in her Complaint "sex was a motivating factor in Defendant's treatment of her," she does not raise the issue in her response. *See Hashem-Younes v. Danou Enters. Inc.*, 311 F. App'x 777, 779 (6th Cir. 2009) (affirming the district court's application of the *McDonnell Douglas* analysis where the plaintiff failed to raise a mixed-motive claim in her complaint or in her response to the defendants' summary judgment motion, and the record was "utterly silent as to mixed motives"). In fact, Plaintiff states in her response she is relying on indirect evidence of discrimination and therefore the *McDonnell Douglas* shifting burden analysis is appropriate.

7

economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761; 762 (1998); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008). The Sixth Circuit has defined an adverse employment action as,

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993)).

Plaintiff asserts she was forced to perform harder work and was subjected to derogatory comments based on her gender which together constituted an adverse employment action. Plaintiff relies on *Ford v. General Motors Corp.*, where the court found an adverse employment action when there was evidence of an increased work load, heightened scrutiny based on protected status, and constructive discharge. 305 F.3d 545, 553-54 (6th Cir. 2002). As evidence of an adverse employment action, Plaintiff points primarily to her own deposition testimony and that of Shawn Creal, a former driver for Defendant.

First, Plaintiff has argued she was assigned harder work. Plaintiff testified she was assigned harder jobs on a more frequent basis than the male drivers. Byers Dep. 59:4-15, 60:20-24, 61:24-62:3, 64:24-65:15, 68:21-69:13. For example, Plaintiff testified that on her first day back from workers comp leave she was assigned the ethanol job that had caused her injury. Byers Dep. 82:8-83:6. She also testified that after her return from her injury the ethanol job was assigned to her more than the other drivers. Byers Dep. 74:13-75:7; 75:16-21; 78:19-79:19. Plaintiff testified that when she complained about that assignment aggravating her back injury she was assigned to the Memphis

8

job, but that other jobs were added to the Memphis run to make it much longer, although other drivers did not have other jobs added on when they were assigned the Memphis job. Byers Dep. 106:12-107:18; 107:25-108:15.

Defendants argue that the records refute that Plaintiff was given more difficult assignments. The Record of Truck Activity sheets for February 2008 reflect that during this period Plaintiff was assigned the ethanol job on one occasion: February 6, 2008. DN 12-10. After that date, the records reflect Plaintiff was assigned the Memphis job. DN 12-10. During this same period Shane Hayden hauled two ethanol loads and Tommy Cunningham hauled one. DN 12-11, 12-12. The records further reflect that on only two occasions, out of nine, Plaintiff was required to make other stops on the Memphis job: February 14 and 19. DN 12-10. The records also reflect that other drivers who were assigned the Memphis run occasionally were required to make additional deliveries. At least two other drivers, Rittenberry and Cunningham, also testified that it was not uncommon to be required to make another stop while on the Memphis job. Rittenberry Dep. 28:24-29:18; Cunningham Dep.41:7-42:19, March 15, 2010.

In addition to the ethanol job which Plaintiff testified she was assigned more than her male co-workers, she testified that she was the only driver assigned the difficult Graves County Pavement job. Byers Dep. 60:23-24; 61:24-62:9. Defendant points to the Daily Dispatch Logs for the year 2007, which reflect that only four runs were made to the paving plant and all four were assigned to male drivers.

There is evidence that Defendant may not have keep complete records. Before the Court are two types of records: the "Daily Dispatch Log" and the "Record of Truck Activity" from each driver. Driskill kept the Daily Dispatch Log. He testified that the Dispatch Log listed every truck

9

and driver and that he was supposed to record the jobs he assigned to each driver on that log. Driskill Dep. 45:15-19, Feb. 15, 2010. He also stated that he sometimes only recorded a driver's first load instead of all job assignments. Driskill Dep. 57:22-58:18. He also explained he only kept those records for one month before he disposed of them. Driskill Dep. 46:10-9, 56:2-18, 57:4-5. Defendants have provided the Daily Dispatch Logs beginning January 2, 2007 until August 3, 2007. The dispatch records have not been produced for any time prior to, or after, 2007. The Record of Truck Activity is a document filled out by the individual driver documenting the jobs the driver completes each day. The Record of Truck Activity for each driver has been provided for February 2008. No other Record of Truck Activity sheets have been provided.

Plaintiff next asserts she was subjected to derogatory comments which, together with the harder work, rose to the level of an adverse employment action. Plaintiff has pointed to the testimony of Shawn Creal that the dispatcher, David Driskill, and another driver, Trevor Collins, would make jokes about Plaintiff and give her jobs that Collins did not want. Creal Dep. 22-23, March 31, 2010. Plaintiff testified that she was told by a co-worker, Gerald, she should not work there because she was a woman in a man's job. Byers Dep. 19:16-20:13; 23:8-23; 25:4-15; 27:2-9, 36:10-24. Plaintiff provided testimony that derogatory comments regarding her lifestyle and the fact that she did not live or dress like a stereotypical female were made by other employees. Rittenbery Dep. 13:24-25, 14:1-9, 21:24-22:8, 27:24-28:4; Creal Dep. 103:11-104:4, 105:4-25, 122:14-123:17. The record reflects that Gerald was terminated relatively soon after Plaintiff's employment and that he was not a supervisor and had no control over Plaintiff.

It is a very close question whether Plaintiff has established sufficient evidence of an adverse employment action; however, out of caution the Court finds Plaintiff has established a genuine issue

of material fact. The Court is not confident all the facts are before it and finds this is an issue better examined at the close of all the testimony.

Defendant next argues that Plaintiff is unable to show the final element, i.e, that she was treated differently than similarly situated non-protected co-workers. As just discussed, Plaintiff asserts she was given harder work than male employees and thus was treated differently. Defendants argue that the dispatch records refute this. The Court has found there is a genuine issue of material fact regarding this issue.

Furthermore, Plaintiff also asserts she was treated differently than male drivers returning from injuries when she returned from her injury. Plaintiff argues that other male drivers were permitted light duty or modified assignments to accommodate their medical conditions. Plaintiff identifies several employees who she alleges received more favorable treatment after their injuries than Plaintiff, including Shane Hayden, Buddy Rittenberry, and Joseph Gilbert. Plaintiff must demonstrate that she is similarly situated in all relevant aspects with the employees with whom she seeks to compare herself. *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 458 (6th Cir. 2004).

Plaintiff testified Shane Hayden was allowed to do light-duty work after he was injured, explaining, "he came back on light duty and basically just sat around the warehouse and did nothing for that week and maybe another week." Byers Dep. 78, 190:15-19. Defendant presented evidence that Hayden injured his left shoulder on July 15, 2007. DN 15-3. Defendant has also produced the dispatch log from July 20, 2007 indicating Hayden was dispatched that day as a driver. DN 15-4. There is no evidence what, if any, restrictions Hayden was given by his physician upon his return to work; however, the record is clear that Plaintiff was allowed to return to work with no restrictions.

11

Plaintiff asserted Buddy Rittenberry was allowed to switch form the long Memphis run to shorter local routes to ease his hemorrhoid pain. Byers Dep. 192:5-15. Rittenberry testified that he never requested to be moved to local runs to reduce his pain. Rittenberry Dep. 30:10:21, March 15, 2010. He stated that although he was having problems he continued to do his normal work. Rittenberry Dep. 30:21-22. The record also reflects Plaintiff was switched to the Memphis run after she informed management that the ethanol run aggravated her prior injury. Byers Dep. 106:14-19. Therefore, Plaintiff was not treated differently.

Plaintiff asserts another position was created for Gilbert on his return after an injury. Gilbert was involved in an accident in which the truck he was drive burned. Byers Dep. 14:2-11. Gilbert was severely injured and was not able to drive a truck again. Byers Dep. 190:1-10. As a result, Gilbert was assigned a night dispatch job. Byers Dep. 186:19-21, 190:1-10. Plaintiff is not similarly situated to Gilbert as he suffered much more extensive and severe injuries than Plaintiff.

As with Plaintiff's assertion of an adverse employment action, the Court finds this is a very close question and one better examined at the close of all the evidence. Out of caution the Court finds Plaintiff has established some dispute about whether she was treated differently than male drivers returning from an injury. Plaintiff has also established a dispute about whether she was given more difficult work than her male co-workers.

Plaintiff has established a prima facie case of disparate treatment prior to her termination. It does not appear Defendant has asserted a legitimate non-discriminatory reason for the alleged disparate treatment; therefore, the Court need not determine if Plaintiff has presented sufficient evidence of pretext. Summary judgment is denied.

 **B. Termination**

Defendant argues Plaintiff cannot establish a prima facie case of discrimination based on her termination because she cannot establish that she was replaced by person outside of the class or that similarly situated non-protected employees were treated more favorably. Defendant asserts Plaintiff was not replaced and that Defendant has downsized the number of drivers since her termination. Defendant further asserts Plaintiff has not shown that other male drivers were not terminated after an altercation with a co-worker, especially one where the co-worker sought medical treatment. In the alternative, Defendant argues that even if Plaintiff has established a prima facie case, Plaintiff is unable to show that Defendant's stated non-discriminatory reason for her termination is pretext. Defendant's stated reason for terminating Plaintiff was her altercation with Wil Taylor during which he was injured.

In order to establish pretext "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir.1994) (citing *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1109 (8th Cir.1994)) (overruled on other grounds by *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009). The plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the action], or (3) that they were insufficient to motivate [the action]" in order to establish pretext. *Id.* at 1084 (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993)).

The Sixth Circuit has held that "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009). This honest-belief rule requires an employer

13

"establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). However, "once the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce 'proof to the contrary.'" *Id.* at 807; *see also Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 713-14 (6th Cir. 2007).

Here, Defendant has pointed to specific facts that it had at the time the decision to terminate was made which would justify its belief in the proffered reason. An investigation was performed by a consultant, Chris Jordan at Construction Safety Consultants, Inc. DN 12-16. Statements from Plaintiff, Taylor, and Danny McGregor were all collected. DN 12-16. Defendant also had the emergency room note confirming Taylor sought treatment the afternoon of February 19, 2008. DN 23-17. The medical note stated he was complaining of an assault by a co-worker. DN 23-17. The consultant concluded "the actions taken by Ms. Byers were not only unprofessional, but were harmful to another co-worker." DN 12-16.

Based on the facts reasonably before Defendant, Defendant had a reasonable basis and an honestly held belief that the incident between Plaintiff and Taylor had occurred. Defendant had the statements of both parties as well as the decision of a third party not employed by Defendant.

Plaintiff has not presented evidence which establishes that the stated reason did not actually motivate her termination or was insufficient to motivate her termination. Plaintiff argues that the facts do not support the conclusion that Plaintiff caused the altercation or injured Taylor. Plaintiff's disagreement with the facts relied upon by the employer does not create a genuine issue of material fact that would defeat summary judgment if the employer made a "reasonably informed and considered decision." *See Michael v. Catepillar Fin. Servc.*, 496 F.3d 584, 599 (6th Cir. 2007)

(quoting *Majewski v. Automatic Data Processing*, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001)). Plaintiff, citing *Vincent v. Brewer Co.*, argues that the Court may find discrimination where the facts do not support the justification offered for termination. 514 F.3d 489, 498-99 (6th Cir. 2007). In *Vincent*, the employer claimed it laid off a female employee due to downsizing; however, the evidence showed that the employer hired more employees after terminating the plaintiff. *Id.* Plaintiff argues this case is analogous because the facts do not support a finding that Plaintiff injured Taylor. A more analogous circumstance would be where Defendant fired Plaintiff for injuring another employee but later allowed an employee to remain after injuring another employee. There is no such evidence before the Court in this case. Here, the case law makes clear if Defendant reasonably relied on the facts before it in make its decision, regardless if they are now proven to be "'mistaken, foolish, trivial, or baseless,'" Defendant is entitled to summary judgment. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009). Here, whether or not this altercation actually took place and regardless of what happened during the altercation, the fact that Defendant reasonably and honestly relied on the information before it and Plaintiff has not established pretext requires the Court grant summary judgment for Defendant.

**II. Disability Discrimination in violation of the ADA and KCRA**

Plaintiff alleges in her Complaint that Defendant violated both the Americans with Disabilities Act ("ADA") and the KCRA when Defendant, despite being aware of Plaintiff's physical limitations and light-duty work restrictions, refused to accommodate Plaintiff. Defendant argues that Plaintiff's claim fails as she unable to establish that she is a qualified individual with a disability. Plaintiff asserts she was temporarily unable to perform her job and she is permanently limited in her ability to bend, wash dishes and ride her jet ski.

15

As stated, Plaintiff asserts disability discrimination under both the ADA and KCRA; however, the same analysis applies to both claims. *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). The ADA prohibits employers from discriminating "against a qualified individual with a disability." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines disability as:

> (a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual;
> (b) a record of such an impairment; or
> (c) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

Part (a) is applicable in this case and Plaintiff must prove more than mere impairment; Plaintiff must establish the impairment substantially limits one or more major life activity. *Bryson*, 489 F.3d at 575. The regulatory definition states that one is substantially limited when one is

> unable to perform a major life activity that the average person in the general population can perform; or [is] significantly restrict[ed] as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. §1620.2(j). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i) (2008).[3] There are several factors which may be considered when determining whether a major life activity

---

[3] The ADA was amended effective January 1, 2009 by the ADA Amendments Act of 2008 Pub. L. No. 110-325, 122 Stat. 3553 (2008). The events that give rise to Plaintiff's claims occurred well before the effective dates of the amendments. These Amendments do not apply retroactively. *Milholland v. Sumner Co. Bd. of Educ.*, 569 F.3d 562 (6th Cir. 2009). Therefore, the amended version of the ADA does not govern.

is substantially limited, including (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *Id.* The Court may also consider the job or jobs from which the individual has been disqualified because of the impairment. 29 C.F.R. § 1630.2(j)(3)(ii); *see McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 372-73 (6th Cir. 1997).

Plaintiff has testified that she is limited in her ability to bend, wash dishes, and ride her jet ski. Byers Dep. 183:2-7 (dishes), 183:14-15 (bending), 6:23-7:2 (ski). Arguing Plaintiff is not disabled, Defendant points to evidence that she was allowed to return to her regular job as a truck driver without restrictions. DN 12-15. Specifically, her physician explained, "[s]he is having no pain . . . I have allowed her to return to work on 02/04/08 to her regular job, I have not given her any permanent restrictions." DN 12-15. Defendant also points to evidence that Plaintiff has continued to work as a truck driver since her termination. Byers Dep. 136:14, 184:11-23. Defendant also points out that Plaintiff testified she rode her jet ski after her back injury. Byers Dep. 4:20-5:22.

The Court finds Plaintiff is not disabled within the meaning of the ADA. The Court notes that Plaintiff has not alleged she is substantially limited in the major life activity of work; therefore, Defendant's argument regarding Plaintiff's ability to continue to work is misplaced. However, Plaintiff has not provided sufficient evidence to establish her alleged impairment limits a major life activity. Although under the current ADA regulations bending is specifically listed as a major life activity, it was not so labeled under the prior regulations under which this action arose. Furthermore, when asked if her back problems kept her from bending she responded, "[t]o a certain extent." Byers Dep. 183:14-15. Plaintiff has not shown that she was substantially limited in her

17

ability to bend.

Plaintiff also testified that her impairment "affects from washing dishes to whatever." Byers Dep. 183:5-6. Washing dishes is a household task and such tasks are generally considered a part of the major life activity of caring for oneself. *See generally McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d at 371-2; *see also Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 362 (3d Cir. 2000). In *McKay*, the Sixth Circuit affirmed the district court's holding that the "plaintiff was not limited in the 'major life activity' of caring for herself because 'the only household function [the plaintiff] claims to be substantially limited in is mopping." *Id.*(citations omitted). Similarly to the plaintiff in *McKay*, Plaintiff is not limited in the major life activity of caring for herself because the only household function she claims to be limited is washing dishes and she does not allege that she is substantially limited, only that her ability is affected.

Summary judgement is granted for Defendants on Plaintiff's disability discrimination claims.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. Plaintiff's claim for sexual discrimination prior to her termination remains; all other claims against Defendant are dismissed.

In addition, Defendant's Motion for Leave to File Excessive Pages is GRANTED and Defendant's Motion for Leave to File Exhibit Inadvertently Omitted from its Reply to Plaintiff's Response to Motion for Summary Judgment is GRANTED.

An appropriate judgment shall issue.